IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| REFRIGERATED CONSTRUCTION & SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 01-AR-442-S |
| COLDMATIC BUILDING SYSTEMS, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Before the court is a motion to dismiss for lack of *in personam* jurisdiction filed by defendant, Coldmatic Refrigeration of Canada, Ltd. ("Coldmatic Canada"). Plaintiff, Refrigerated Construction Services ("RCS"), sues not only Coldmatic Canada but Coldmatic Building Systems, Inc. ("Contemporary Panels") and Mike Spears ("Spears"), alleging breach of contract, fraud, breach of fiduciary relationship, misrepresentation, breach of warranty, negligence, and breach of the Alabama Extended Manufacturer's Liability Doctrine.

Questions of *in personam* jurisdiction require a two part analysis. The exercise of jurisdiction must comport with: (1) the forum state's long-arm statute, and (2) the "due process" requirements of the Fourteenth Amendment. *Oliver v. Merritt Dredging Co., Inc.*, 979 F.2d 827, 830 (11th Cir. 1992). Because Alabama's long-arm statute extends to the limits of "due

1

process", in this state the "due process" inquiry is all that is required. *Id.* at 830. The exercise of jurisdiction by courts in Alabama is proper so long as sufficient "minimum contacts" exist with this state such that the extension of jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310 (1945). This court can determine that it has jurisdiction based either on specific conduct connected with the cause of action (specific jurisdiction) or the overall contacts of the defendant with the state (general jurisdiction). This court finds no basis for exercising general jurisdiction over Coldmatic Canada so the question becomes whether this court should exercise specific jurisdiction over Coldmatic Canada.

Coldmatic Canada states that "[its] only connection with this lawsuit is that it is the sole shareholder of Coldmatic Building Systems, Inc. (Florida) d/b/a Contemporary Panels, a defendant in this action." Coldmatic further asserts that "this *de minimus* connection is insufficient to warrant the exercise of personal jurisdiction over Coldmatic." In opposition, RCS asserts that Coldmatic has substantial connection with this case and that this court can properly exercise jurisdiction. RCS states that as the parent corporation and sole stockholder of Contemporary Panels, Coldmatic Canada may be subjected to suit in this court by virtue of the activities of its subsidiary.

2

In approximately June of 1999, RCS entered into an agreement with Polk's Meat Products, Inc. ("Polk's") to act as a general contractor for the construction of a commercial refrigeration warehouse situated in Magee, Mississippi. Polk's purchased from Contemporary Panels the laminated steel panels to be used in the project that is the subject of this action. The panels were installed by RCS, after which some of the panels began to delaminate. Coldmatic Canada is a Canadian corporation with its principal place of business in Concord, Ontario, Canada.

Coldmatic Canada is the sole shareholder of Contemporary Panels. Contemporary Panels is a Florida corporation that manufactures insulated building panels using expanded polyethylene. Coldmatic Canada purchases large quantities of steel at a discount and sells it to Contemporary Panels at cost. The evidence is pretty clear that Contemporary Panels is a "mere instrumentality" of Coldmatic Canada. One hundred percent of the stock of Contemporary Panels is owned by Coldmatic and both entities have the same officers.

In November of 1999 Contemporary Panels sent Coldmatic Canada a letter about Polk's and RCS. The letter stated: "We need to send to RCS by tomorrow a copy of our payment schedule requesting 25% down . . . .Please call me right back about how you would like the payment schedule to read." When Coldmatic Canada sold the steel to Contemporary Panels it knew that the steel was

3

to be used by RCS and that RCS was located in Alabama. The steel had to pass through Alabama to get from Florida to Mississippi. The efforts of Coldmatic Canada and its subsidiary Contemporary Panels were purposefully directed towards RCS. Coldmatic Canada purposefully availed itself of the benefits and protections of Alabama and should have reasonably anticipated being hailed into court in Alabama.

In addition to selling the steel used by RCS, Coldmatic Canada was in constant communication with Contemporary Panels about RCS, the delamination of the panels and possible remedial measures. The deposition of Spears, the General Manager of Contemporary Panels, demonstrates that Spears looked to Ian Cookson ("Cookson"), a purchasing manager for Coldmatic Canada, for instructions when serious decisions must be made. Spears also testified that Contemporary Panels sent its financial statements to Coldmatic Canada. The record shows that Spears sent the request for steel to Cookson. In November of 1999 Spears sent a fax to Cookson asking him to review the specifications and metal requirements for the Polk's job. After the panels began to delaminate Spears sent a letter from RCS to Cookson and did so because he felt things were moving to a different level. Spears responded to RCS's letter after consulting Cookson, then he faxed RCS's reply to Cookson. Spears also acknowledges that Cookson could fire him if he wanted to do so but he did not consider

4

Cookson his boss. Yet, in a letter written by Spears to Cookson, Spears states that he wanted to be able to offer a solution to Polk's and wanted to get Cookson's approval. Spears also communicated with Moss about this project. In one piece of correspondence to Moss, Contemporary Panels told him: "Please see the analysis on the Polk's Meat Job. It appears that **we** still have a favorable profit . . . I should have the January Financial Statement to you tomorrow." (emphasis supplied). Spears also represented to RCS that it would "hear from someone in Canada" about a solution.

These repeated communications with Cookson indicate that Coldmatic Canada exercised substantial control over Contemporary Panels in relation to this project. Coldmatic Canada had sufficient minimum contacts with Alabama so that the exertion of jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington*, 326 U.S. 310 (1945).

The second part of the "due process" analysis requires a determination of whether the exercise of personal jurisdiction over Coldmatic Canada is reasonable. In determining the reasonableness of a forum's exercise of personal jurisdiction, a court must consider at least the following factors: (1) the burden on the defendant, (2) the interest of the forum, (3) the plaintiff's interest in obtaining relief, (4) the interstate

5

judicial system's interest in obtaining efficient, convenient and effective relief, and (5) the shared interest of the states in furthering fundamental substantive social policies. *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1358 (11th Cir. 2000). The burden on Coldmatic Canada of litigating in Alabama is not unreasonable. Coldmatic Canada concedes that this court is not inhibited by "international boundaries" when determining the reasonableness of this burden. Rather Coldmatic Canada should be treated just as it would be treated if it was located within the boundaries of the United States. Furthermore, modern methods of transportation and communication have significantly ameliorated the burden of litigating far away from home. *See McGee v. International Life Ins. Co.*, 355 U.S. 220m 223, 78 S.Ct, 199, 201, 2 L.Ed. 223 (1957); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 629 (11th Cir. 1996). Coldmatic Canada controlled and benefitted from the business activities of its subsidiary in Alabama. Considering the nature of the activity of Coldmatic Canada, the resultant foreseeability of its being required to defend an action in Alabama, the obvious interest of the plaintiff in obtaining convenient and effective relief, and the relative lack of inconvenience that will be incurred by Coldmatic Canada in appearing and defending against the action in Alabama, the court is convinced that it is fair and reasonable to require Coldmatic Canada to defend in Alabama. By separate order,

the motion to dismiss for lack of *in personam* jurisdiction will be denied.

DONE this 14th day of January, 2003.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT JUDGE