```
        IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION
```

REFRIGERATED CONSTRUCTION   )
SERVICES, INC.,               )
                              )
    Plaintiff,              )    CIVIL ACTION NO.
                              )
v.                          )    01-AR-442-S
                              )
COLDMATIC BUILDING SYSTEMS,   )
INC., et al.,              )
                              )
    Defendants.            )

ENTERED
MAR 11 2003

## MEMORANDUM OPINION

Before the court are cross-motions for summary judgment by plaintiff, Refrigerated Construction & Services, Inc. ("RCS"), and by defendants, Coldmatic Building Systems, Inc., d/b/a/ Contemporary Panels ("Contemporary Panels") and Mike Spears ("Spears"). A separate motion for summary judgment filed by defendant, Coldmatic Refrigerated of Canada, Ltd. ("Coldmatic Canada"), has been stayed pending action by the Eleventh Circuit on the attempted interlocutory appeal by that defendant challenging *in personam* jurisdiction.

RCS moves for partial summary judgment on its claims for breach of contract, breach of express warranty, breach of implied warranty of fitness for a particular purpose and breach of implied warranty of merchantability as against Contemporary Panels. Contemporary Panels and Spears seek summary judgment on all of RCS's claims, which include: breach of contract, breach of

1



express warranty, breach of contract and damage to RCS as an intended third-party beneficiary, subrogation, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, two counts of fraud, breach of fiduciary relationship, suppression, indemnity, and a violation of the Alabama Extended Manufacturers Liability Doctrine ("AEMLD").

## Statement of Undisputed Facts

On or about June 24, 1999, RCS entered into an agreement with Polk's Meat Products, Inc. ("Polk") to act as the general contractor to build a large commercial refrigeration warehouse and system in McGee, Mississippi. On or before June 24, 1999, Spears, as the agent of supplier, Contemporary Panels, acting within the line and scope of his authority, made oral presentations to RCS with respect to steel panels that Contemporary Panes hoped would be used in the project. The parties disagree over exactly what was said. RCS claims that Spears told it that the panels would conform to all of the job requirements and that they met all of Polk's specifications. RCS further contends that Contemporary Panels was aware of the specifications and requirements as well as of the controlling governmental regulations. Contemporary Panels claims, to the contrary, that it was only made aware that the panels were to be used by Polk in a meat storage facility. RCS maintains that it

2

relied on the representations made by Spears, and only because of those representation did it agree to use panels manufactured by Contemporary Panels.

According to Contemporary Panels, it submitted a price quote to RCS on or about November 12, 1999. That quotation stated: "[u]pon acceptance of this quotation, please ask Polk's Meat Products to issue a purchase order along with a 20% down payment ($58,000) as well as the performance waiver on stainless steel." On November 30, 1999, Polk issued its purchase order directly to Contemporary Panels based on the November quotation. Contemporary Panels claims that the acceptance of the quotation and the purchase order by Polk created a contract between it and Polk, to which RCS was not a party. If a vendor-purchaser relationship between Contemporary Panels and RCS was intended, it was such a strange and vague arrangement as to lack the requisites of a contract.

Contemporary Panels reasonably maintains that it only extended an express Limited Warranty on the panels to its purchaser and user, Polk, and not to RCS. The limited warranty carried the following statement in all capital letters:

> CONTEMPORARY PANELS MAKES NO OTHER EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY OF ANY KIND REGARDING THE GOODS TO BE SUPPLIED HEREUNDER, WHETHER AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR USE, OR ANY OTHER MATTER.

The Limited Warranty also provided:

> CONTEMPORARY PANELS warrants **to its immediate customer** that the insulating panels to be supplied hereunder shall not peel, delaminate, or otherwise deteriorate for a period of one (1) year from the date of installation.

(emphasis supplied).

Beginning in Spring 2002, after the installation of many of the panels, the stainless steel skin on some of them began to delaminate. Contemporary Panels was notified, and it provided replacement panels. The delamination was unique to the Polk project. It had never occurred before. By August 2000, after the Polk project had been completed, Polk contacted RCS and informed it that a substantial majority of the steel panels were rapidly experiencing additional delamination and that immediate emergency measures were needed. The overall circumstances demonstrate that there was a sale by Contemporary Panels to Polk on RCS's recommendation of Contemporary Panels' product, followed by an installation of the product by RCS as part of its contract with Polk. Why Contemporary Panels insisted on the purchase order from Polk goes unexplained, but the fact speaks for itself.

RCS asserts that it sought assistance, material, labor and remedial measures from Contemporary Panels and specifically made demand upon Contemporary Panels to eliminate the problems relating to the delamination. RCS claims that Spears acknowledged that the problem was related to the manufacturing process and was not caused by the installation or by any other action of RCS.

4

This is a too hopeful interpretation of the evidence by RCS. The cause is still unknown. Contemporary Panels also contends that it did not refuse to address the problem. It claims that it proposed a solution, namely to replace the panels, that Polk agreed to the proposal but that RCS rejected it.

RCS undertook repairs from another source and thereafter demanded reimbursement from Contemporary Panels of over $600,000 for labor and materials. Contemporary Panels undisputedly did not agree to the solution undertaken by RCS. It says that it was totally unaware that RCS had undertaken emergency repairs. Contemporary Panels claims that RCS has refused to allow it to hire any contractor other than RCS to do further work on the panels and that the price for repair claimed by RCS was and is unreasonable.

RCS says that in order to protect itself from liability, and at the demand of Polk, it performed the emergency remedial measures at its own expense.

RCS offers no evidence of an assignment to it of any right Polk may have against Contemporary Panels.

### Analysis

RCS claims entitlement to judgment as a matter of law on its breach of contract, breach of express warranty and breach of implied warranty claims. It cannot mean to seek such judgments against Spears, who was simply the agent of Contemporary Panels.

5

RCS contends that the express warranty against defects enured to its benefit. This overlooks the fact that the warranty was extended only **"to its [Contemporary Panels] immediate customer"**, and assured the purchaser only that the panels would not peel or delaminate for a period of one year from the date of installation. Contemporary Panels points out that it had no contractual relationship whatsoever with RCS and that what and who caused the delamination remains a matter of dispute.

Contemporary Panels argues that there is no evidence upon which a finding that a contract existed between RCS and Contemporary Panels could be based. More specifically, it points out that there is no evidence of an offer by RCS or an acceptance by RCS, or vice versa, or of a consideration paid to Contemporary Panels by RCS. The purchase price was paid directly by Polk to Contemporary Panels. Perhaps in anticipation of this unanswerable argument, RCS says that it is subrogated to, or is the third-party beneficiary of, the warranty and contract rights of Polk. But, RCS offers no rationale for such a subrogation or how it could have acquired the rights of Polk against Contemporary Panels. RCS's fuzziness in making this "fall-back" claim renders its claim devoid of merit. The mere fact, if it be a fact, that Polk has looked to RCS for corrective measures with respect to the delamination, does not lead to a right of subrogation or to a right of indemnity.

There is simply no evidence that could lead to a finding that RCS had a contract with Contemporary Panels or that RCS stands in the shoes of Polk. Therefore, defendants' motion for summary judgment on the breach of contract claim and the express warranty claim must be granted.

In regard to the implied warranty claims, Contemporary Panels points out not only that it did not sell anything to RCS but that its limited warranty to Polk expressly disclaimed all implied warranties. Nevertheless, where a seller refuses to honor its own limited warranty, that warranty may be properly found to fail, opening the door to a jury award of damages for a breach of implied warranty. *Winchester v. McCulloch Brothers Garage, Inc., et al.*, 388 So.2d 927 (Ala. 1980). This becomes an academic proposition, however, because the court is unaware of any theory upon which a non-purchaser can make a claim on such an implied warranty if it could not have made a claim on an unfulfilled express limited warranty. Thus, RCS's implied warranty claim fails, just as did its express warranty claim.

RCS claims in its Count V that the representations made by Spears were false, and were known to be false when made, or were so recklessly made as to constitute an intentional act. In Count VIII RCS alleges fraud arising from Spears' statements concerning initial problems with the panels. In order for a plaintiff to maintain a claim for fraudulent misrepresentation based on the

7

non-performance of an act to be performed in the future, it is essential that the plaintiff show that at the time of the alleged misrepresentations the defendant intended not to perform the promised acts and instead intended not to perform them. *McGriff v. Minnesota Mut. Life Ins. Co.*, 127 F.3d 1410, 1414 (11th Cir. 1997). There is no evidence that Spears knew, or had reason to know, that the panels would delaminate in the environment in which they would be used. According to the uncontroverted evidence the delamination here was unique to the Polk project and had never occurred before. Simply promising that a product will perform satisfactorily is no more than traditional salesmanship or "puffing". It does not form a way around *caveat emptor* by the expedient of transforming a contract claim into a fraud claim. Insofar as Spears' alleged representations that the panels met specifications, the allegation is so lacking in particularity as to fail the requirements of Rule 9 (b). Defendants' motion for summary judgment aimed at the fraud claims will be granted.

    RCS's allegation of a breach of a fiduciary relationship in Count VI, and its suppression claim in Count VII, both also fail as a matter of law. There is no reasonable basis in fact or law to establish that a fiduciary relationship existed between Contemporary Panels, or Spears, or both of them, and RCS. Such a relationship does not arise out of the mere fact that a general contractor deals with a vendor who sells supplies to the owner of

the project. Even if the general contractor were deemed to be a purchaser, RCS and Contemporary Panels dealt at arms length, and there is no evidence that Contemporary Panels acquired a position of supremacy over RCS or obtained a position of trust and confidence upon which RCS could make a legitimate argument it had a right to expect Contemporary Panels to look after it in the premises. And anyway, there is no evidence that Contemporary Panels or Spears actually knew that the panels would delaminate. A party cannot suppress a fact that it does not know.

Contemporary Panels next moves for summary judgment on RCS's indemnity claim. Contemporary Panels strangely argues: "Plaintiff has not proven facts supporting the contention that Contemporary Panels agreed to be bound by the indemnification provision. Moreover, plaintiff has not proven facts showing the [sic] RCS has indemnified Polk's Meats for any losses associated with the panels." The court is confused by this discussion of an arguable indemnification of Polk by RCS, especially when Polk is not a party and when there is no evidence of any third party claim against Polk involving the panels. Defendants' original answer contained a Rule 12(b)(6) assertion that the complaint in all its aspects failed to state a claim. The court is willing to interpret defendants' present Rule 56 motion to embrace its Rule 12(b)(6) defenses, including the statute of frauds defense. There is no evidence of a writing upon which to frame an

9

indemnity claim against Contemporary Panels. See Ala. Code § 8-9-2(3). RCS's conclusory allegation that it holds some sort of right of indemnity against Contemporary Panels has no evidentiary or legal basis.

Lastly, Contemporary Panels claims that it is entitled to summary judgment on the AEMLD claim. An action under AEMLD requires proof that a plaintiff suffered personal injury or property damage caused by one who sold the product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer. *Huprich v. Bitto,* 667 So.2d 685 (Ala. 1985). Under AEMLD no claim can arise from damage to the product itself or from economic damages arising out of damage to the product. *Lloyd Wood Coal Co. V. Clarke Equipment Co.,* 543 So.2d 671 (Ala. 1989). In its brief, understandably, RCS does not bother to respond to Contemporary Panels' argument in this regard. Summary judgment will therefore be granted on RCS's AEMLD claim.

### Conclusion

The foregoing discussion makes little distinction between defendants Contemporary Panels and Spears because, except in rare instances, the parties themselves speak of these two defendants interchangeably, or as if they are one entity. They are, in fact and law, quite different. Most of RCS's claims

10

would be totally frivolous if aimed at Spears. By separate order, the court will deny the motion for summary judgment of RCS and will grant the motion for summary judgment of Contemporary Panels and Spears.

DONE this  11th  day of March, 2003.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE