```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION

REFRIGERATED CONSTRUCTION &    )
SERVICES, INC.,                )
                               )
        Plaintiff,             )      CIVIL ACTION NO.
                               )
v.                             )      01-AR-442-S
                               )
COLDMATIC BUILDING SYSTEMS,    )
INC., et al.,                  )
                               )
        Defendants.            )
```

FILED 03 APR 25 PM 3:02 U.S. DISTRICT COURT N.D. OF ALABAMA

ENTERED APR 2 5 2003

## MEMORANDUM OPINION

Before the court is a motion by plaintiff, Refrigerated Construction Services, Inc. ("RCS"), to alter, amend or vacate the court's March 11, 2003 order, which granted summary judgment in favor of defendants, Coldmatic Building Systems, Inc. ("Contemporary Panels") and Mike Spears ("Spears"). RCS had moved for partial summary judgment on its claims for breach of contract, breach of express warranty, breach of implied warranty of fitness for a particular purpose and breach of implied warranty of merchantability as against Contemporary Panels. Contemporary Panels and Spears had moved for summary judgment on all of RCS's claims, which included: breach of contract, breach of express warranty, breach of contract and damage to RCS as an intended third-party beneficiary, subrogation, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, two counts of fraud, breach of

1

153

fiduciary relationship, suppression, indemnity, and a violation of the Alabama Extended Manufacturers Liability Doctrine ("AEMLD"). RCS seeks reconsideration only as to the breach of contract, breach of warranty (express and implied), and subrogation claims. RCS notes that neither defendants' motion for summary judgment nor the court's order granting summary judgment addressed RCS's negligence claim contained in Count Seventeen of the complaint, which also named as a defendant Coldmatic Canada, Ltd.

In support of its present motion, RCS offers the affidavit of Edward E. Harris ("Harris") and the contract documents involving the construction of the Polk's Meat Products, Inc. ("Polk's") warehouse out of which this dispute arose. Contemporary Panels correctly points out that a party is not entitled to present additional evidence under a Rule 59(e) motion after the entry of summary judgment where the plaintiff could have presented the evidence during the pendency of the summary judgment motion. *See Mays v. United States Postal Service*, 122 F.3d 43 (11th Cir. 1997). Accordingly, the court will not consider these materials. However, the court agrees with RCS that the evidence previously submitted does present a genuine issue of material fact as to whether there was a contract between RCS and Contemporary Panels and whether RCS has a right of equitable subrogation against Contemporary Panels.

**Restatement of Undisputed Facts**

On or about June 24, 1999, RCS entered into an agreement with Polk's to act as the general contractor to build a large commercial refrigeration warehouse and system in McGee, Mississippi. On or before June 24, 1999, Spears, as the agent of supplier, Contemporary Panels, acting within the line and scope of his authority, made oral presentations to RCS with respect to steel panels that Contemporary Panels hoped would be used in the project. The parties disagree over exactly what was said. RCS claims that Spears told it that the panels would conform to all of the job requirements and that they met all of Polk's' specifications. RCS further contends that Contemporary Panels was aware of the specifications and requirements as well as of the controlling governmental regulations. Contemporary Panels claims, to the contrary, that it was only made aware that the panels were to be used by Polk's in a meat storage facility. RCS maintains that it relied on the representations made by Spears, and only because of those representation did it agree to use panels manufactured by Contemporary Panels.

According to Contemporary Panels, it submitted a price quote to RCS on or about November 12, 1999. That quotation stated: "[u]pon acceptance of this quotation, please ask Polk's Meat Products to issue a purchase order along with a 20% down payment ($58,000) as well as the performance waiver on stainless steel."

On November 30, 1999, Polk's issued its purchase order directly to Contemporary Panels based on the November quotation. Contemporary Panels claims that the acceptance of the quotation and the purchase order by Polk's created a contract between it and Polk's, to which RCS was not a party. However, along with the purchase order was a requisition form that contained a description of the product and the price. It indicated that the invoice should be sent to Polk's c/o RCS and that the materials should be sent to RCS c/o Polk's. At the bottom of the requisition form were two signature lines; one was labeled "Authorized Signature Vendor" and the other was labeled "Authorized Signature RCS, INC." The form was signed by Glen Van Blaricom of RCS.

## Analysis

In its motion for partial summary judgment RCS claimed entitlement to judgment as a matter of law on its breach of contract, breach of express warranty and breach of implied warranty claims. In support of its motion RCS offered an affidavit by Skip Burch ("Burch"), President of RCS, the deposition testimony of Spears, and RCS's complaint. In his affidavit, Burch stated that RCS specifically relied upon Contemporary Panel's skill and judgment and based on its representations and decided to buy the insulated stainless steel panels manufactured and provided by Contemporary Panels. In his

deposition, Spears made several references that indicate his belief that there was a contract between RCS and Contemporary Panels. Spears testified as follows:

> Q. Did you understand you would be selling your product to RCS or to the end user?
>
> A. RCS.
>
> Q. Did you understand that you were selling it some industrial development board for tax purposes, but you were looking to RCS for payment?
>
> A. What I understood is that RCS was buying the panels, but it was being guaranteed by the owner, and the owner was solvent because he was being guaranteed by the bank.
>
> Q. Okay. So you were selling to RCS and you looked up their credit, and be it good or bad, you knew or had an understanding that the owner of the project, Polk Meats, Inc., would be guaranteeing that price and whether they were good or bad, you weren't so worried because you knew that they were being guaranteed by their bank?
>
> A. That's correct.
>
> ***
>
> Q. Had you been paid?
>
> A. Me personally?
>
> Q. RCS had paid Contemporary Panes in full by then, had they not?

A. Yes.

Spears again acknowledges the fact that RCS, not Polk's, was purchasing the panels from Contemporary Panels when he said "yes" to the question " . . .the middle of the page of this Exhibit 5 dated October 27, 1999, is the purchase order by which RCS was purchasing these items from you?" In regards to this same purchase order Spears testified that it was a quote from Contemporary Panels to RCS. A copy of this purchase order was part of both parties' evidentiary submissions. Finally, when asked "[h]ave you and RCS ever reached any agreement that would sort of stand in the shoes of your original contract with them?" Spears said "No."

In his affidavit Spears contradicts his deposition testimony. He states that RCS was not the purchaser of the panels and that the role of RCS was to simply act on behalf of Polk's in selecting the panels for the project. Spears also testified in his deposition that Mr. Polk visited Contemporary Panels' plant and was present during some of the negotiations between RCS and Contemporary Panels. Contemporary Panels also sent some type of waiver to Polk's and not RCS. When asked why it did not send the waiver to RCS Spears responded "[b]ecause Mr. Polk was going to be paying the bill, and he's the person that had to be satisfied."

6

Furthermore, the correspondences between Spears, Polk's, and RCS support the assertion that there is a genuine dispute of material fact as to whether there was a contract between RCS and Contemporary Panels. There is a letter from Spears to Polk's stating: "We are excited about the prospect of providing panels for the new facility and were happy to have you visit our plant." In this same letter, Spears asks Polk's, not RCS, to sign the above-mentioned waiver acknowledging that "due to the nature of stainless steel there may be slight surface imperfections, which may include but are not limited to waves, ripples . . ." There is also a letter from Contemporary Panels to RCS stating: "[u]pon acceptance of this quotation, please ask Polk's Meat Products to issue a purchase order along with a 20% down payment ($58,000) as well as the performance waiver on stainless steel." In that same letter addressed to RCS, Spears stated "[t]his is to confirm our discussions with Mr. Burch as to the acceptance of our quotation with the following price adjustments." On November 30, 1999, Polk's issued its purchase order directly to Contemporary Panels based on the November quotation. Along with the purchase order was a requisition form that contained a description of the product and the price. It indicated that the invoice should be sent to Polk's c/o RCS and that the materials should be sent to RCS c/o Polk's. At the bottom of the requisition form were two signature lines; One was labeled "Authorized Signature Vendor"

and the other one was labeled "Authorized Signature RCS, INC." It was signed by Glen Van Blaricom of RCS.

Spears also sent a letter to Coldmatic Canada, Ltd. listing some of the major points of the transaction and how it was set up. Spears stated:

> Polk's Meats is the party responsible for paying the bills. They have an Industrial Development Bond in the State of Mississippi. This allows them to avoid sales tax.
>
> All billing will go to Polk's Meat Products % of RCS-Birmingham, Ala.
>
> RCS will issue requisitions to Polk's Meat and in turn Polk's will issue us a Purchase Order. We need to send to RCS by tomorrow a copy of our payment schedule . . .
>
> RCS's superintendent will check in all the materials and submit billing twice a month to Polk's Meat for payment.

The basic elements of a contract are an offer and an acceptance, consideration and mutual assent to the essential terms of the agreement. *Hargrove v. Tree of Life Christian Day Care Center,* 699 So.2d 1242 (Ala. 1997). In the March 11, 2003 opinion this court stated: "If a vendor-purchaser relationship between Contemporary Panels and RCS was intended, it was such a strange and vague arrangement as to lack the requisites of a contract." The court still believes that the arrangement was vague and strange, but after looking again at the above outlined evidence the court finds that there is a genuine dispute of material fact as to whether there was a contract between RCS and

8

Contemporary Panels. Therefore, defendants' motion for summary judgment on the breach of contract claim and the express warranty claim should have been denied while the court was denying RCS's motion for partial summary judgment.

RCS also seeks reconsideration of the opinion and order as to its subrogation claims. "A right of subrogation is an equitable doctrine that applies where one pays money to another pursuant to a duty to indemnify the other, and then seek reimbursement from the culpable or liable party." *Mount Airy Is. Co v. Doe Law Firm*, 668 So.2d 534 (Ala. 1995). "Moreover, the most fundamental element of the doctrine of subrogation is that the party seeking to apply it must have paid something to indemnify the other." *Ex Parte BE&K Const. Co.*, 728 So.2d 621 (Ala. Civ. App. 1997). The doctrine of subrogation is not dependent on contract, but is a creature of equity, designed for promotion of justice; and the application of the remedy depends on the facts. *Carter v. Carter*, 38 So.2d 557 (Ala. 1949).

There are two kinds of subrogation known to the law: conventional subrogation and equitable subrogation. 73 Am.Jur. 2d *Subrogation* § 2 (1974). "Equitable subrogation is given a liberal application and is broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which that other party should have paid." 73 Am.Jur. 2d *Subrogation* § 14. "Conventional

subrogation, on the other hand, is founded on some understanding or agreement." 73 Am.Jur. 2d *Subrogation* § 9. Subrogation, as a doctrine, is not fixed and inflexible, nor is it static. *Id.* Rather, it is sufficiently elastic to meet the ends of justice. *Id.* Furthermore, the doctrine is not constrained by form over substance, nor is it within the form of a rigid rule of law. *Id.* "Thus, the mere fact that the doctrine has not been previously invoked in a particular situation is not a prima facie bar to its applicability. The doctrine of subrogation embraces all cases where, without it, complete justice cannot be done. Grounded upon this premise, there is no limit to the circumstances that may arise in which the doctrine may be applied particularly if applying the doctrine will provide the most efficient and complete remedy which can be afforded." *Id.*

Contemporary Panels correctly points out that "[i]t is well established that a right of subrogation does not exist where there is no primary liability." Contemporary Panels argues that without establishing primary liability, RCS cannot "stand in the shoes" of Polk's and obtain a right of equitable subrogation against it. However, RCS has raised a genuine dispute of material fact as to whether Contemporary Panels caused the delamination of the panels at Polk's. In the March 11, 2003 memorandum opinion this court stated: "RCS claims that Spears acknowledged that the problem was related to the manufacturing process and was not

10

caused by the installation or by any other action of RCS. This is a too hopeful interpretation of the evidence by RCS. The cause is still unknown." Spears testified that he had no reason to suspect an installation problem or use problem, but that he did not know if the manufacturing process is what caused the delamination.

RCS contends that an equitable right of subrogation is precisely what has been created in this case. In the March 11, 2003 memorandum opinion the court stated: "RCS's fuzziness in making this 'fall-back' claim renders its claim devoid of merit. The mere fact, if it be a fact, that Polk has looked to RCS for corrective measures with respect to the delamination, does not lead to a right of subrogation or to a right of indemnity." This is still true. RCS may ultimately not be found to have a right to subrogation, but it has presented sufficient evidence to raise a genuine dispute of material fact as to whether it has that right.

There is evidence that Polk's looked to RCS for corrective measures. In a letter to Spears, dated November 30, 2000, two and half months before RCS filed its complaint, RCS's attorney stated:

> "My Client [RCS] was caused to incur approximately $50,000 in labor and material costs . . . undertaking emergency and remedial measures at the Polk facility . . . My Client has requested, on numerous occasions, that these remedial measures be undertaken by you, but no efforts have been initiated. My Client has been informed that the balance remedial efforts actually may cost as much as $650,000. Polk insists that these be undertaken immediately and threatened to file suit if such work is not undertaken promptly . . . .We have no

11

>     choice but to insist that Contemporary Panels undertake
>     this work, at its own expense, <u>immediately</u>!"

Supportive materials with respect to the emergency repairs undertaken was enclosed in the letter. As Contemporary Panels points out in its reply to RCS's motion to reconsider, it has been over two years since the filing of this action, over one year since Contemporary Panels moved for summary judgment, and during that time the case has been through two other federal judges before landing in this judge's chambers. Deciding whether to grant or deny summary judgment was and is not an easy task in this case. The parties presented "fuzzy" arguments on many issues. However, after taking a second look the court believes that RCS has raised a genuine dispute of material fact as to whether it has a right of subrogation. Of course, if it succeeds in getting a jury to find that Contemporary Panels breach a contract with it, it will not need the subrogation alternative.

In regard to the implied warranty claims and negligence claim in Count 17 of the second amended complaint, the court finds that they are subsumed within the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and due to be dismissed in accordance with the memorandum opinion and order of March 11, 2003.

## **Conclusion**

By separate order, this court will grant RCS's motion to alter, amend or vacate this court's memorandum opinion and order

in regards to the subrogation, breach of contract and breach of express warranty claims and will dismiss the implied warranty and negligence claims.

DONE this 15th day of April, 2003.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT

13